# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGE BOURIS, | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-3473 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| RICHARD DIDDAMS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, George Bouris, brought this action against defendant Richard Diddams asserting claims for breach of fiduciary duty, declaratory judgment, and equitable accounting. Diddams now moves this Court to dismiss Bouris' complaint for lack of venue and failure to state a claim on which relief may be granted. For the reasons set forth herein, the defendant's motion to dismiss [10] is denied.

**Background**

The following facts are taken from the complaint and are accepted as true for the purpose of ruling on the present motion. Commander's Concepts Commissioning, LLC is a Delaware limited liability company engaged in the business of mechanical, electrical, and plumbing engineering and commissioning. CCC was established in 2014 pursuant to an Operating Agreement & Articles of Incorporation as a joint undertaking between Bouris, a licensed engineer, and Diddams, a disabled veteran who would manage the business' administration. The parties agreed that Bouris would receive a 49% ownership interest and Diddams would receive a 51% ownership interest.

CCC sought to qualify as a Service Disabled Veteran Owned Small Business and a Veteran Owned Small Business pursuant to federal regulations. After being denied this status, the parties' executed an Amended Operating Agreement and Articles of Incorporation (the "amended

1

agreement") in December 2014.  Under the Amended agreement, Diddams was named CEO of CCC and Bouris was named President of CCC.  Bouris and Diddams were the only two members of the Board of Managers.  Based upon his 51% controlling interest in the company, Diddams exercised decision-making control over the company.

From December 2014 through March 2017, CCC provided engineering and commissioning services around the United States, and Bouris contributed substantial time, resources, and labor in order to make the business successful, all without compensation.  In February, 2017, Bouris raised a number of concerns to Diddams relating to accounting practices and alleged misrepresentations in contract bids.  Seemingly in response to those concerns, on March 27, 2017, Diddams executed a Second Amendment to Operating Agreement of Commander's Concept Commission LLC (the "second amended agreement").  The second amended agreement amendment, executed unilaterally and without notice to Bouris, contained a number of provisions favorable to Diddams and unfavorable to Bouris.  The second amended agreement amended the governing choice of law provision to apply Virginia law, established that any actions arising from the agreement must be heard in Virginia, and imposed an arbitration requirement.  It also removed Bouris from the Board of Managers, imposed additional restrictions on the transfer of member's interest in CCC, and gave Diddams exclusive control over the dissociation of members.  The amendments further altered the indemnification provision to protect only Diddams and required Bouris to obtain written consent before he could engage in any business related to the nature of CCC's business.  These provisions deprived Bouris of the value of his stake in the company, restricted Bouris' ability to work in his chosen field, and diminished the value of CCC.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) tests the adequacy of venue.  Once venue is challenged, the plaintiff bears the burden of establishing that the case was

filed in the proper district.  *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 915 (N.D. Ill. 2010) (Cole, Mag. J.).  In assessing a defendant's motion to dismiss for improper venue, the Court must view the allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true unless they are contradicted by affidavit.  *Deb v. SIRVA*, 832 F.3d 800, 809 (7th Cir. 2016).  The Court may also consider evidence outside the pleadings to the extent that it assists the Court in determining whether venue is proper.  *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations.  The allegations must contain sufficient factual material to raise a plausible right to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level."  *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011).  Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a).  When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

Venue is proper, in pertinent part, in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  When a contract is central to a case, courts determining venue consider, among other things, where performance was to take place and where the conduct underlying the breach occurred.  *Allstate Life Ins. Co. v. Stanley W.*

3

*Burns, Inc.*, 80 F. Supp. 3d 870, 878 (N.D. Ill. 2015) (St. Eve, J.). When the underlying events consist of communications made by two parties located in separate districts, section 1391 can be satisfied by a communication transmitted to or from the district in question, so long as the communication is sufficiently related to the cause of action. *Id.*

Here, Bouris has asserted that he negotiated and signed the relevant Operating Agreement in Illinois. Although Diddams claims that Bouris' conduct amounted to little more than executing an electronic signature, the negotiation and execution of an agreement, even electronically, is sufficient to establish venue. *See YES Lifts, LLC v. Normal Indus. Materials, Inc.*, No. 10 C 4828, 2011 WL 1770458, at *5 (N.D. Ill. May 9, 2011) (Feinerman, J.) (finding venue proper where lease-related payments and communications were sent to this district); *Fogelson v. Iatrides*, No. 99 C 6892, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000) (Kocoras, J.) (finding venue based, in part, on the fact that an agreement was drafted in this district and returned to this district once executed). Although the defendants rightly note that Virginia might well have a stronger connection to this suit, the question before this Court on a Rule 12(b)(3) motion is merely whether venue exists, not whether another jurisdiction might be a better venue.

Diddams' alternatively contention that venue in this district is improper because of the forum selection clause contained in the second amended agreement. A forum selection clause, however, cannot be enforced through a Rule 12(b)(3) motion to dismiss. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S.Ct. 568, 578–79, 187 L.Ed.2d 487 (2013). This Court accordingly holds that venue in this district is proper, and turns its attention to Diddams' arguments on the merits.[1]

---

[1] The Court separately notes that the enforceability of the forum selection clause in this case is likely linked to the merits of this action. *See AAR Int'l, Inc. v. Nimelias Enters., S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (recognizing that a forum selection clause resulting from fraud, undue influence, or overweening bargaining power need not be enforced).

4

Diddams first contends that Bouras has failed to state a claim for breach of fiduciary duty. Under Delaware law,[2] the managers and controlling members of a limited liability company owe fiduciary duties of care and loyalty to the LLC and its members unless the LLC agreement contains language to the contrary. 6 Del. C. § 18-1104. Here, the LLC agreement contains no such language,[3] and Delaware's fiduciary duties of care and loyalty therefore apply as a matter of law.

Under Delaware law, "[t]he fiduciary duty of due care requires that directors of a Delaware corporation use that amount of care which ordinarily careful and prudent men would use in similar circumstances and consider all material information reasonably available in making business decisions, and that deficiencies in the directors' process are actionable only if the directors' actions are grossly negligent." *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693, 749 (Del. Ch. 2005) (internal citations and quotations omitted), *aff'd* 906 A.2d 27 (Del. 2006). In the duty of care context, gross negligence has been defined by Delaware courts as reckless indifference to or deliberate disregard of the whole body of stockholders, or actions which are "without the bounds of reason." *Id.* (internal quotations and citations omitted). Here, the allegations concerning Diddams' conduct towards Bouris and the resulting impact on CCC's financial stability are sufficient to state a claim for breach of the duty of due care.

Under Delaware law, the duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). A classic example of director self-interest in a business transaction is when a director receives a personal benefit from a transaction that is not received by the shareholders

---

[2] Diddams contends, without clear support, that under the second amendment agreement's choice of law provisions, Virginia law should govern this action. This action, however, challenges the execution of that agreement and is therefore brought pursuant to the agreement in place at the time of amendment. Accordingly, based on the strength of the arguments presently before it this Court concludes that Delaware's laws govern.

[3] Diddams appears to contend that the First Amended Agreement contained an implied waiver of these fiduciary duties, in light of its provisions and the federal regulatory scheme that the parties' intended CCC to comply with. This Court finds no support for this contention.

generally. *Id.* at 362. In such a situation, the benefiting director cannot be viewed as disinterested or independent. *Id.*

Here, Bouris has plausibly alleged that Diddams executed the March 2017 Amendment for the sole purpose of diminishing Bouris' interest in CCC, making it impossible for him to sell his ownership interest to a third-party, and precluding him from working in any capacity. The allegations clearly establish that these actions benefited Diddams by removing Bouris from the business and devaluing or diluting his ownership interest. Accordingly, Bouris has sufficiently stated a claim for breach of the duty of loyalty.

Diddams also contends that Bouris has failed to state a claim for breach of the implied covenant of good faith and fair dealing. Stated in its most general terms, the implied covenant of good faith and fair dealing requires that parties in a contractual relationship refrain from engaging in arbitrary or unreasonable conduct with the effect of preventing the other party to the contract from receiving the fruits of the bargain. *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). Existing contract terms control, however, and the implied covenant of good faith and fair dealing cannot be used to circumvent the terms of the parties bargain. *Id.* Delaware courts determine whether the implied covenant would have been breached by analyzing whether a party would have agreed to the terms of the initial incorporating agreement under the specific factual circumstances alleged. *Gerber v. Enter. Prods. Holdings, LLC,* 67 A.3d 400, 418 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013).

Here, it is undisputed that the first amended agreement conferred Diddams with the unilateral ability to modify or amend the operating agreement. On the allegations at issue, however, it is not clear whether the specific amendments that Diddams performed, such as the unilateral imposition of an arbitration clause or non-compete clause, were contemplated by the parties as being within the scope of that power. To the contrary, it appears likely that no party would have

agreed to the terms of the initial incorporating agreement under the circumstances alleged here. This Court accordingly holds that Bouris has sufficiently stated a claim under for the breach of the implied covenant of good faith and fair dealing.

Finally, Diddams contends that Bouris has failed to state a claim for equitable accounting. This argument, however, was not raised until Diddams' reply, and was accordingly waived.

**Conclusion**

For the foregoing reasons, Diddams' motion to dismiss [10] is denied.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: November 13, 2017